UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELIZABETH G. RUCKELSHAUS, </br></br> Plaintiff, </br></br> v. </br></br> GERALD L. COWAN, </br> KENT EMSWILLER, </br> EMSWILLER, WILLIAMS, NOLAND & </br> CLARK, A PROFESSIONAL </br> CORPORATION, </br></br> Defendants. | No. 1:17-cv-02009-JPH-MJD |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Elizabeth Ruckelshaus sued Gerald Cowan, Kent Emswiller, and the law firm Emswiller, Williams, Noland & Clark P.C. for malpractice after they allegedly failed to carry out her wishes when terminating her father's trust. Both parties have moved for summary judgment. Dkt. 129; dkt. 137. Because Ms. Ruckelshaus filed her complaint after the statute of limitations elapsed, her claim is time-barred. Defendants' motion is **GRANTED**, and Ms. Ruckelshaus's motion is **DENIED**.

## I.
## Facts and Background

Because Defendants have moved for summary judgment, the Court views and recites the evidence in the light most favorable to Ms. Ruckelshaus and draws all reasonable inferences in her favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Since Mr. Ruckelshaus has also moved for summary judgment, the Court would normally interpret the evidence in a light most

1



PLAINTIFF'S EXHIBIT B

favorable to Defendants when considering her motion. *See Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). That's not necessary here, however, because even when all evidence is interpreted in Ms. Ruckelshaus's favor, Defendants are entitled to summary judgment.

Ms. Ruckelshaus's father, Conrad Ruckelshaus, created a trust (the "Trust") in which his two children, Thomas and Elizabeth ("Ms. Ruckelshaus"), would each receive income for life upon his death. Dkt. 124-4 at 3-5. Under the terms of the Trust, the surviving sibling would receive the deceased sibling's share of the Trust if the deceased sibling had no children. *Id.* at 4.

Around 1998, shortly after Conrad and his wife died, Thomas asked Ms. Ruckelshaus if she would agree to modify the Trust. Dkt. 124-1 (Ruckelshaus Dep.) at 25:7-17, 29:10-13. Specifically, Thomas wanted to leave his portion of the Trust to his wife, Polly, after he died instead of letting it pass to Ms. Ruckelshaus. *Id.* at 29:10-13, 32:2-8. Ms. Ruckelshaus was sympathetic to Thomas's wishes, dkt. 1-1 ¶ 10, so she orally agreed that if Thomas died before Polly, Polly would get a "life estate" in his interest in the Trust. Dkt. 124-1 at 33:22-34:4. Polly's interest in the Trust funds would last only for her life—once she died, any remaining funds from Thomas's distribution would go to Ms. Ruckelshaus. *Id.* at 34:3-6; dkt. 1-1 ¶ 9; dkt. 107 ¶ 9.

In December 1998, Ms. Ruckelshaus retained Kent Emswiller and Gerald Cowan from Emswiller, Williams, Noland & Clark to help her terminate or modify the Trust in a manner that would accomplish this goal. Dkt. 124-1 at 54:19-55:3; dkt. 138 at 18 ¶ 6; dkt. 136-2. Defendants' retention letter stated

2

in relevant part: "[t]he purpose of this engagement is to achieve the termination of your father's, Conrad R. Ruckelshaus' Revocable Trust." Dkt. 124-6 at 8. The retention letter did not mention creating a life estate for Polly or having any of Thomas's portion of the Trust ever revert to Ms. Ruckelshaus. *Id.* Ms. Ruckelshaus signed the letter. Dkt. 124-1 at 45:3-11.

Mr. Emswiller and Mr. Cowan then prepared a Petition Requesting Termination of Trust (the "Petition") and a Conditional Settlement Agreement (the "Agreement") that would terminate the Trust. Dkt. 124-6 at 10-33. The phrase "life estate" does not appear in the Petition or the Agreement, and neither document contains language that could be construed to have created a life estate-only interest in Thomas's share of the Trust funds for Polly. The Agreement did not place any restrictions on how Thomas or Polly could spend the Trust funds, or how the remaining Trust funds would be distributed upon their deaths. Rather, the Agreement divided the proceeds of the Trust between Thomas and Ms. Ruckelshaus (and a few other beneficiaries) and stated in part that there were "no other written or oral agreements among the parties concerning the subject matter of the Conditional Settlement Agreement." *Id.* at 22.

On March 29, 1999, Mr. Emswiller sent the Petition and the Agreement to Ms. Ruckelshaus. Dkt. 124-2 at 7. She read both documents and signed them. Dkt. 124-6 at 10-33; dkt. 124-1 at 49:11-13. On June 21, 2000, the probate court granted the Petition. Dkt. 124-6 at 36. The next month, the Trust was dissolved, giving Ms. Ruckelshaus and Thomas more than a million

3

dollars each without any restrictions or instructions that would limit how each could use their respective shares of the Trust funds. Dkt. 124-1 at 64:14-16, 65:12-16.

Thomas died on July 1, 2009. *Id.* at 55:13-16. There is no designated evidence showing how Thomas spent his share of the Trust over the nine years after the Trust's termination. Dkt. 124-15 at 9-10. In October 2015, Polly died, leaving her entire estate to her children. Dkt. 124-1 at 60:21-22, 62:19-21. There is no designated evidence showing how Polly spent the remaining Trust funds (if any) over the six years between Thomas's death and her death. Dkt. 124-15 at 10.

Shortly after Polly's death, Ms. Ruckelshaus learned that the remainder of Thomas's portion of the Trust would not revert back to her. Dkt. 124-1 at 61:9-62:2. In May 2017, Ms. Ruckelshaus sued Defendants for malpractice, alleging that they failed to carry out the request she made in 1998 that the Agreement require Polly's interest in the Trust funds revert back to her upon Polly's death. Dkt. 1-1 at 6-7.

Defendants have moved for summary judgment on all of Ms. Ruckelshaus's claims. Dkt. 129. Ms. Ruckelshaus has moved for partial summary judgment on Defendants' affirmative defenses that Ms. Ruckelshaus's personal lawyer is liable for the alleged errors and that Ms. Ruckelshaus released Defendants from liability when she signed the Agreement. Dkt. 138 at 44-45.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court of the basis for its motion and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

## III.
## Analysis

In a diversity case, federal procedural law applies while state substantive law applies. *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The cause of action for attorney malpractice, including the relevant statute of limitations, is substantive, so the Court applies Indiana law. *See Niswander v. Price, Waicukauski & Riley LLC*, No. 1:08-cv-1325, 2010 WL 3718864, at *2 (S.D. Ind. Sept. 10, 2010).

Defendants raise several defenses to Ms. Ruckelshaus's claims, but the statute-of-limitations defense is dispositive, so it is the only defense the Court addresses. Defendants argue that Ms. Ruckelshaus's claims are time-barred because the complaint was filed outside of the applicable two-year statute of limitations. According to Defendants, the statute of limitations applicable to

Ms. Ruckelshaus's malpractice claim started to run in the late 1990s or early 2000s when Ms. Ruckelshaus could have discovered that the Agreement did not provide for Thomas's interest in the Trust to revert to her. Ms. Ruckelshaus contends her claim did not accrue until October 2015 at the earliest because she did not know until after Polly died that the Agreement did not provide for Thomas's remainder of the Trust funds to revert to her upon Polly's death.

An attorney-malpractice claim must be commenced within two years "after the cause of action accrues." Ind. Code § 34-11-2-4. Under Indiana's "discovery rule," a legal-malpractice claim accrues when "the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another." *Myers v. Maxson*, 51 N.E.3d 1267, 1276 (Ind. Ct. App. 2016) (quoting *Biomet Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003)).

Damage caused by an attorney's negligence in drafting a legal document occurs when the document becomes operative, *i.e.* when the document becomes final and unalterable. *Shideler v. Dwyer*, 417 N.E.2d 281, 290-92 (Ind. 1981). For example, in *Shideler*, a client sued an attorney for malpractice alleging that the attorney failed to properly draft a will. *Id.* at 284. The court held that the statute of limitations for the malpractice claim started at the testator's death because that was when the instrument became operative—any drafting errors became "irremediable" at that point. *Id.* at 290. No damage had

occurred earlier because the will could have been modified before the testator's death.

Similarly, the statute of limitations applicable to a malpractice claim related to a trust starts when the trust becomes operative and irrevocable. In *Ickes v. Waters*, 879 N.E.2d 1105, 1107 (Ind. Ct. App.), *clarified on reh'g*, 886 N.E.2d 643 (Ind. Ct. App. 2008), a husband hired a lawyer to create a trust that would provide income to his wife for her life. The wife sued the attorney for malpractice after the attorney created an irrevocable trust that allowed the trustee to cut off her income. *Id.* The court held that the statute of limitations started to run when the trust was operative and irrevocable, not when the husband died. *Id.* at 1109. Because more than two years had passed between the date the trust was operative and the filing of the malpractice lawsuit, the claim was time-barred by the statute of limitations. *Id.*

Here, Ms. Ruckelshaus suffered damage in July 2000 when, following the court's approval of the Petition, the Trust was dissolved and the Trust funds were distributed. That's when the Agreement became operative and final. Damage to Ms. Ruckelshaus could not have occured any earlier than that because any drafting errors could have been remedied. But any errors that may have existed with respect to drafting the Agreement became permanent upon termination of the Trust.

The parties do not dispute that Ms. Ruckelshaus did not know until Polly died that Polly had received Thomas's remaining share of the Trust funds with no restrictions. Defendants argue, however, that Ms. Ruckelshaus could have

7

discovered the error through ordinary diligence as early as 1998 when she received the retention letter. Dkt. 130 at 16. Ms. Ruckelshaus claims that she could not have discovered the error before Polly's death and the execution of Polly's estate. Dkt. 138 at 23. The question is when, with the exercise of reasonable diligence, Ms. Ruckelshaus could have discovered the alleged tortious conduct and corresponding injury, *i.e.*, the Trust was not drafted according to her wishes.

For a claim to accrue, "it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Myers,* 51 N.E.3d at 1276. In the context of discovering that a person has suffered damage by the tortious conduct of another, reasonable diligence "'means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.'" *Id.* (quoting *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006)). This includes reviewing and understanding documents relevant to legal claims.

For example, in *Groce v. Am. Family Mut. Ins. Co.*, 5 N.E.3d 1154, 1156 (Ind. 2014), homeowners sued their insurance agent after their home sustained substantial fire damage, and their agent had not acquired a policy that would have replaced the entire home. The applicable statute of limitations was two years and the homeowners brought the claim more than two years after receiving the policy. The homeowners argued that their claim did not accrue

8

until after they had experienced a loss and had to file a claim. *Id.* at 1159. In affirming dismissal, however, the court held that the claim was filed outside of the statute of limitations. *Id.* Had the homeowners exercised ordinary diligence by reading and understanding the insurance policy when it was issued, they could have discovered at that time that the policy did not provide for full-replacement value. *Id.*

Here, Ms. Ruckelshaus may not have known until Polly's death that under the Agreement, Thomas's share in the Trust funds would not revert to her upon Polly's death. But with the exercise of ordinary diligence she could have discovered this much sooner. Ms. Ruckelshaus was given copies of the Petition and Agreement in 1999, more than a year before they were filed. Dkt. 124-2 at 7. These documents in no way limit how or when Thomas could spend his money or require that the remainder of his money revert to Ms. Ruckelshaus upon Polly's death. To the contrary, the Agreement distributes the Trust funds to Thomas and Mrs. Ruckelshaus and states that there are no other agreements regarding the Trust funds. Dkt. 124-6 at 22. Using ordinary diligence, Ms. Ruckelshaus could have discovered that the Agreement was not drafted according to her wishes and consequently that she would never be entitled to receive any portion of Thomas's Trust funds.

Ms. Ruckelshaus argues that she acted with ordinary diligence because she "relied upon what her lawyers, the Defendants, told her." Dkt. 138 at 25. The homeowners in *Groce* made a similar argument—arguing that ordinary diligence allowed them to rely on their insurance agent's representations about

9

their coverage. 5 N.E.3d at 1159. But the court said that an insured party may not reasonably rely on an insurance agent's representations regarding a promise about future activity. *Id.* The agent in *Groce* told the homeowners only that he would get their desired policy "written up"—a representation that "dealt with his promise of future activity." *Id.* Therefore, the homeowners did not use ordinary diligence when they relied on his promise of future activity in lieu of carefully reading and understanding their insurance policy. *Id.*

Here, Ms. Ruckelshaus alleges that she "relied and trusted that [the Defendants] *would do* what she asked them to do"—an allegation of future activity. Dkt. 138 at 25 (emphasis added). She has not designated any evidence showing that Defendants represented to her that the executed Agreement created a life estate in Thomas's Trust funds for Polly that would revert back to her. Like the homeowners in *Groce,* Ms. Ruckelshaus did not act with ordinary diligence when she relied on what Defendants said they would do in lieu of reading and understanding the Agreement she signed.

Ms. Ruckelshaus also argues that she should not be charged with understanding the Agreement because she "was not a trained lawyer." Dkt. 138 at 25. But the relevant documents were not so complex that only a lawyer could decipher their contents. The Petition was two pages long; the Agreement was five pages long. Dkt. 124-6 at 10-33. The Agreement was written in standard-size font, with clearly numbered paragraphs and minimal legalese. A quick scan of the Agreement would have revealed that it did not create any life estate—or any restrictions at all—upon Thomas's receipt and subsequent use

10

of the Trust funds. Ms. Ruckelshaus, a college graduate, dkt. 124-1 at 8:5-18, can reasonably be expected to have reviewed and understood seven pages that gave her more than a million dollars.

Ms. Ruckelshaus asks the Court to conclude that the statute of limitations on her malpractice claim was tolled until the date she realized Defendants' alleged error rather than the date she could have discovered it by reading the Agreement. Holding as Ms. Ruckelshaus wishes would require creating an exception to the established rule of Indiana law that "a person is presumed to understand the documents which [she] signs." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899–900 (Ind. Ct. App. 1997). This Court is required to faithfully follow Indiana law by applying existing precedent and where it is not clear, trying to "predict how the [Indiana] supreme court would act given the chance." *In re Zimmer, NexGen Knee Implant Prod. Liability Litig.*, 884 F.3d 746, 750 (7th Cir. 2018). Here, Ms. Ruckelshaus has not identified any authority suggesting that the Indiana Supreme Court would create such an exception if presented with these facts and arguments. Under Indiana law, Ms. Ruckelshaus must be charged with knowledge of what the Agreement that she read and signed says, so her legal malpractice claim accrued when the Petition was granted, and the Agreement became final in 2000. *Ickes*, 879 N.E.2d at 1109; *Shideler*, 417 N.E.2d at 290.

Ms. Ruckelshaus filed her malpractice claim in 2017, seventeen years after she was allegedly damaged by Defendants' malpractice. Therefore, Ms.

Ruckelshaus did not bring her claim within the applicable two-year statute of limitations, so it is time-barred.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [129].

Ms. Ruckelshaus's motion for partial summary judgment is **DENIED as moot** because the Court did not rely on Defendants' argument for third-party liability or the release of liability in reaching its conclusion. Dkt. [137].

Ms. Ruckelshaus's motion to strike Defendants' surreply is also **DENIED as moot** because the Court did not consult Defendants' surreply in preparing this order. Dkt. [162]. Defendants' motions to exclude expert opinions are also **DENIED as moot** because Defendants are independently entitled to summary judgment. Dkt. [142]; dkt. [144]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 8/16/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Philip Edward Kalamaros
HUNT SUEDHOFF KALAMAROS
pkalamaros@hsk-law.com

Robert Joseph Nice
THE NICE LAW FIRM
rjnice@nicelawfirm.com

John G. Shubat
THE NICE LAW FIRM
jgshubat@nicelawfirm.com

12